Hon. ASAHEL PECK,  
Hon. HOMER E. ROYCE, } Assistant Judges.  
Hon. TIMOTHY P. REDFIELD,

---

### DANIEL P. EDDY *v.* EDWIN WILSON.

*Municipal Corporations. School District. Illegal Voters. Taxes. Rate-Bill. School-House and Hall. Collector. Evidence.*

The records of the proceedings of municipal public corporations cannot be collaterally attacked and overthrown in a suit at law.

Where the record showed that at a school district meeting "it was voted that the district build a new school-house; 16 for and 11 against it," and evidence was offered, in a tax case growing out of the action of the district in respect to said school-house, to prove that seven of the sixteen who voted in the affirmative in that vote were not legal voters in that school district, it was *held* that the evidence was properly rejected.

Even if the proposition to build had failed, the district might take up the question again at the same meeting, and vote a tax to build with, and pass other necessary votes for the erection of a school-house, and the same would be valid, without formally rescinding the first vote not to build.

A district may unite with other parties in the erection of a building, one part to be owned by the district as a school-house, and the other part to be owned by the other party and used for purposes disconnected with the schools of the district.

Where towns and school districts keep within the limits of their corporate powers, their proceedings in raising and expending money cannot be collaterally impeached and held void because, in the opinion of a court and jury, a less sum would have answered the immediate necessities of the corporation, or the money might have been more judiciously and economically expended.

The district united with an incorporated association to erect a building, the district to own the lower story for a school-room, the association the upper story for a hall. The plaintiff offered to show that a majority of the legal voters of the district belonged to the association when the vote to build and raise a tax was passed; that the district did not need a new school-house, having one sufficient for the district already; that a new one could have been built sufficient for the district, and much better for school purposes than the building erected, for about one half the cost to the district of said building; that the chief motive of the district in building a school-house was not to accommodate the district, but to get a hall to be used for purposes unconnected with the school of the district, and to have the district participate in the expense of the hall; that the votes to build and raise a tax were not passed in good faith, but were a fraud on the district; and many other facts of similar character tending to show the improper motives and ill-advised action of the district as represented by the majority party on the school-house question. The county court excluded this testimony and directed a verdict for the defendant and rendered judgment accordingly, and the supreme court affirmed the judgment.

The issuing of one rate-bill, whether valid or invalid, does not exhaust the power of the prudential committee, under the statute, so but that he may legally issue another bill for the same tax.

The collector was properly allowed to show by parol the contents of the notices of sale of the property distrained, without first proving the loss of the notices. More than a year having elapsed after the notices were posted up, the court would have been warranted in presuming the loss.

REPLEVIN of a cow, heifer and calf. The defendant filed an avowry that said property was taken by defendant as collector of school district No. 2, Clarendon. Trial by jury, March term, 1870, WHEELER, J., presiding.

It was admitted that the defendant was an inhabitant of the district, and had a list, as stated in the rate-bill. The existence of the school district also conceded. The defendant's evidence tended to prove the facts set forth in the avowry.

The plaintiff introduced the records of school district No. 2, showing the proceedings of said district in respect to a school-house, as follows:

### NOTICE.

" The inhabitants who are legal voters in school district No. 2, in Clarendon, are hereby notified and warned to meet at school-house in said district on the 4th day of April next, at 6 o'clock P. M., for the following purposes, viz:

" 1st. To see if the district will vote to build a school-house in said district.

" 2d. To see if the district will agree on location of said house.

" 3d. To appoint a committee of three as a building committee. * * * *

" 4th. To see if the district will vote to build a village hall in connection with said house, or to unite with other parties in building a hall, to be called town hall.

" 5th. To see if the district will vote to raise a tax on the grand list of said district to defray the expense of building said school-house and village hall."

At said meeting it was voted " that the district build a new school-house ; 16 for and 11 against it. Voted to adjourn one week from this evening, at 7 o'clock P. M." Met pursuant to adjournment and voted, among other things, " to appoint a building committee," and a committee was appointed. Voted " to raise a tax, not to exceed $2000, on the grand list of the district, to build a new house." Voted " to adjourn to Wednesday evening, April 22d, at 7 o'clock P. M." Met pursuant to adjournment. Voted " to locate on the lot as reported by the committee." Voted " to unite with other parties, agreeable to warning, to build town hall." Voted " that the building committee solicit subscriptions for the said hall." Voted " to adjourn to Wednesday evening, May 6th, at 7 o'clock P. M." Met pursuant to adjournment, and voted " to add three to the committee to solicit subscriptions, two out of the district and one in the district." After the election of this committee it was voted " to appoint one in each of the remaining districts in the east part of the town " ; and such additional committee was elected.

At an adjourned meeting held on the 9th June, " it was resolved (21 for to 3 against) that the building committee of district No. 2 be instructed to unite with the trustees of the Clarendon Town Hall and Literary Association, to build the contemplated building. It was voted that the district adopt the size of the plan as reported by Mr. Horton, 34 by 50 : 22 for and 2 against. It was voted the building committee be instructed to proceed at once with the building. It was voted that one half of the money be paid by July 1st, and the remainder by September 1st, 1868."

The plaintiff offered to prove that of the sixteen voters who voted to build a school-house at the meeting of April 4th, seven were not legal voters in that school district meeting, so that the vote should have been declared as nine for to eleven against that

measure. This testimony was excluded by the court, and the plaintiff excepted.

The plaintiff also offered to show that at the time of the votes to build and raise the tax of $2000, at the meeting of 4th April, there was an incorporated association called the Clarendon Town Hall and Literary Association existing in said district and town of Clarendon, composed of the inhabitants of said district and others, and to which a majority of the legal voters of said district belonged and owned stock therein, and the plaintiff offered the records of the same and to prove its organization.

The plaintiff also offered to show that said district proceeded, under the votes above set forth, to purchase a lot, and to erect a building two stories high, and in dimensions 34 by 50 feet, in connection with said association, the lower story to belong to said district, and the upper story to said association, the same being made into a hall; that the district did not need a new school-house, but had one sufficient, with small repairs, to fully accommodate the school of the district; that the district did not, and does not, need the building such as has been erected for school purposes of said district; that said district has used only one half of the lower story of said building for school purposes, and only one half of the lower story has been done off into a school-room, and the other half is done off to accommodate and be used for the convenience and in connection with the hall above, as a dressing-room, and for cooking and getting up suppers and the like, and is never designed for school purposes, and was, in fact, built only to enable the association to get a large hall over-head; that it was proclaimed, in and out of said school meetings, by inhabitants of the district, that no school-house should be built unless there could be a hall for said association in connection therewith; that said district have no interests or rights in said hall, and the same is used for dances, theatres, suppers, shows and other purposes, which tend to interrupt and injure the school of said district; that said district undertook the whole business of building said school-house, not for the purpose, or as a chief motive, to accommodate the district, but for the purpose of getting said hall; that before, and in the calling of said meeting of April 4th, and in said meeting and the adjourned meetings of April 11th and 22d, and June 9th, the district acted in bad faith toward the tax-payers of said district and said plaintiff; and the votes to build said school-house and to raise said tax were not passed in good faith, but were a fraud on said district, and were passed, not for the benefit of said district and the building of a school-house for the use of said district, but for the purpose of procuring the

erection of a hall to be used for purposes independent of said district, and in no way connected with the school of said district, and with the intention and for the purpose of having the district participate in the building of said hall, and to contribute towards the expense of the same; and that, in fact, and in pursuance of said purpose, a part of the money thus raised by said tax was appropriated in the building of said hall, and the credit of said district was pledged, and material for said hall was purchased upon the credit of, and was charged to said district, and has not yet been paid; that said hall and school-house were built together, under one superintendent, and in common; that the expense of said building to said district is about double what was required to build a first-class country school-house, suitable and appropriate for school purposes of said district; that a good, nice and substantial school-house, ample for the accommodation of the school of said district, well made and complete throughout, painted, slated and blinded, could have been built for from $1000 to $1200, and that the plaintiff offered to build such an one, with seats for sixty-four scholars, for $1200, and to give bonds to that effect; that said building is ill-shaped, inconvenient, much too large and expensive to keep in repair; that at said school meetings, others, members of said association, and not inhabitants of said district, were present and participated in the business and proceedings of said district meetings; that the sum of $2000 is inadequate to pay the proportion claimed of said district for said building, and to complete the same properly will necessitate a tax of at least $500 more; that a majority of those who voted to build said school-house and hall, and raise said tax, were members and stockholders of said association; that the number of scholars in the district has been decreasing for several years; that the whole number January 1, 1870, was 48 between ages 4 and 20, and the average attendance the first term of 1869 was 19 and a fraction, and the second term 25 and a fraction.

To all which testimony the defendant objected, and the objection was sustained by the court, and said testimony excluded, to which the plaintiff excepted.

The plaintiff put in *four* rate-bills, issued by the prudential committee of said district for the purpose of raising the money to build said school-house. The first one was dated July 5th, 1868. Plaintiff's list in each was $27.65; tax in two first, $14.76 each; in third, $29.53020; fourth, $8.85. It appeared that several of the taxes in the first and second bills were collected and crossed out; but none of the plaintiff's. The second was dated about

August 10, 1868. The third was dated about October 26, 1868. The fourth was without date, but issued subsequently to the others. All were put into the collector's hands about the time they were made.

The third was the bill under which the defendant justifies.

It appeared that the third bill was issued as a substitute for the two previous ones, and because it was thought best to put the whole tax, which it was then desired to raise, in one bill, and when a tax was paid on the third bill, it was crossed out of the three bills, and only so much was collected on the third bill, in any case, as had not been paid on the former ones.

The plaintiff claimed that the prudential committee had no right to issue more than one bill under said vote, and having issued one, their authority was exhausted, and the third bill, under which the defendant justifies, was illegal and void.

The court held that the committee had the right to issue the bills as stated above that they were issued, and that the third bill was legal and valid, to which the plaintiff excepted.

Defendant testified that he took said cattle Nov. 7th, and posted notices of sale Nov. 12th, to sell them Nov. 18th, but did not produce said notices; and said he did not know where they were— had not seen them since he posted them. Plaintiff seasonably objected to parol testimony to show what the notices contained, but the objection was overruled, and the testimony admitted, to which the plaintiff excepted.

The court directed a verdict for the defendant for one cent damages and costs, and rendered judgment for the damages and costs, and for a return of the property, to which the plaintiff excepted.

*Dunton & Veazey*, for the plaintiff.

As to the legality of the tax with reference to the vote of the meeting of April, 4, 1868, to build a school-house :—The warning was—1st, to see if the district would vote to build ; 2d, to locate ; 3d, to appoint committee ; 4th, to build hall ; 5th, to raise tax. If the 1st article failed to be carried, there was no foundation for the succeeding articles. If the proposition to build failed, the proposition to raise a tax of $2000 to build with was a superstruc-

ture without a foundation. A district having voted *not* to build a school-house at a meeting called to act upon that proposition, no occasion was left to raise money to build with. A vote to that effect would be a nullity. It would be as illegal as a vote to raise money for a purpose not authorized by law. The vote not to build was in substance and legal effect a disposition of the whole business for which the meeting was called.

When a question is made and decided, either affirmatively or negatively, the same question, or the same in substance, cannot be moved again during the same session. This is a general rule of legislative bodies. Cushing's L. & P. of Legislative Assemblies, § 312, note 2; § 1254, § 1299.

The important inquiry then on this branch of the case is, whether the vote to build, as it was declared, was illegal.

The vote stood 16 affirmative and 11 negative. The plaintiff offered to show that seven of those who voted to build were illegal voters. If illegal, their votes should not have been counted, and the result of the vote would then have been 9 affirmative to 11 negative. *School District* v. *Atherton*, 12 Met., 111. There was then no legal vote to build. The vote was void, and no subsequent proceedings could render it valid. Cushing, § 206.

The rule is established, that a collector of taxes is accountable in an action of trespass when there is a want of power in the town or district granting the tax, or *where there is any illegality in voting the same. Waters* v. *Daines*, 4 Vt. 602, and cases cited in opinion ; *Downing* v. *Roberts*, 21 Vt., 441.

The vote to build was rendered illegal by the vote to unite with the trustees of the Clarendon Town Hall and Literary Association. There is no authority for such partnership.

The prudential committee had no right to issue more than one rate-bill under the vote to raise a tax, and having issued one legal rate-bill, their authority was exhausted, and the third bill, under which the defendant justifies, was illegal and void. Gen. St., ch. 22, § 47. *Inglee* v. *Bosworth*, 5 Pick., 500.

A legal notice of sale being material to the defendant's justification, the notices should be produced to make legal proof that due notice was given. Secondary evidence was admissible as to

their contents, as in case of other written instruments, only when it is proved that the original is lost. Green's Ev., vol. 1, §§ 84, 509.

The proof offered shows an abuse of the authority of the district to build a school-house, which renders the action of the district and the tax invalid. It also shows that the action of the district was a fraud upon the plaintiff. If there is any limit to the power of a district in building a school-house, it cannot be doubted but that the district in this case overstepped their authority. There is no pretense that the building, or the whole of the lower story, is now or ever will be required for the use of the district, or that it was built so large with reference to any present or prospective necessity. It is apparent from the case that the size of the lower story was determined upon simply with reference to the hall above, and was made twice as large as necessary for the district in order to give a hall of sufficient size above for the use of said association.

The facts proved and offered to be proved show conclusively that the district was swallowed up by the Association, and show a deliberate purpose by the Association, to which a majority of the district belonged, in disregard of the interests, necessities, convenience and economy of the district, to secure the erection of a hall mainly by a tax upon the district; that it was not a school-house, but a hall, which that portion of the district belonging to the Association, and constituting a majority of the district, were seeking, and that their action as a district was simply a distortion, prostitution and abuse of the law giving them the right to build a school-house.

The plaintiff could not have proceeded in equity and obtained an injunction. His remedy is at law. *Sheldon et al.* v. *Center School District*, 25 Conn., 224.

*Edgerton & Nicholson*, for the defendant.

The vote referred to in the first exception "to build a new school-house" was virtually reiterated and affirmed at the several adjourned meetings where no question could be made as to the legal majority.

47

Any subsequent unauthorized misappropriation of the money by the officers or agents of the district would not render the votes, or the action of the collector, illegal so as to subject him to liability.

It was competent and proper for the district to unite with the " Clarendon Town Hall and Literary Association" so as to allow them to construct a section of the same building for their hall.

The third rate-bill (on which the property of the plaintiff was taken) was the only legal one. The first two were probably illegal, and neither of them was attempted to be enforced.

The opinion of the court was delivered by

PECK, J. The record in evidence shows that at the school district meeting of April 4, 1868, " *it was voted that the district build a new school-house,* 16 *for and* 11 *against it.*" The evidence offered by the plaintiff to prove that seven of the sixteen who voted in the affirmative in that vote were not legal voters in that school-district meeting, was properly rejected. The records of the proceedings of municipal public corporations, such as towns and school districts, can not be collaterally attacked and overthrown by evidence of this character. Important interests are entrusted to, and corresponding duties imposed upon, these public municipal corporations, of a governmental character; and such faith and credit should be given to the records of their proceedings, within the scope of their powers, as will enable them to perform these duties, without unnecessary risk and embarrassment. The legal intendment of the record in this case is, that the vote was passed by the votes of such persons as were legal voters. If that intendment could be contradicted in a proceeding brought directly and seasonably to set aside the vote, or to restrain the district or its officers from acting under it, (which we have no occasion to decide,) the record cannot be annulled in this collateral manner by the evidence offered. We are not referred to any authority warranting it; and neither principle nor sound policy requires or justifies it. It is necessarily one of the incidental powers of towns and school districts to decide, in the course of their proceedings, who are inhabitants of the town or district and voters in their meetings. These questions may involve matters of fact and law

which must from necessity be decided and acted on at once, and in which it is true the corporation may sometimes err. But to expose the votes and proceedings of such corporations, regular upon their face, perhaps years afterwards, and when rights may have accrued on the faith of them, to the uncertainty and hazard of being thus impeached collaterally by a re-trial of such questions before a court and jury, (not themselves always infallible,) upon parol evidence as to who voted, which way they voted, and whether they were legal voters in the town or district at the time in question, would open a door to mischiefs ten-fold greater than that sought thus to be remedied.

But if the plaintiff had proved what he offered to show, and thereby rendered that vote of April 4th to build a new school-house null and void, it would not have rendered the tax in question invalid. The subsequent votes of the district at the several adjourned meetings are sufficient to sustain the validity of the tax. At the meeting of April 11th, " it was voted to raise a tax, not to exceed $2000, on the grand list of the district to build a new school-house." This vote, together with the other votes at this and the subsequent adjourned meetings, among which is a vote appointing a building committee, a vote locating the house agreeably to the report of the committee, designating the lot on which it should be built ; and finally on the last adjourned meeting held June 9, 1868, a vote that the building committee of district No. 2 be instructed to unite with the trustees of the Clarendon Town Hall Association to build the contemplated building—and a vote that the district adopt the size of the plan as reported by Mr. Horton, 34 by 50—and a vote that the building committee be instructed to proceed at once with the building, is sufficient without the vote of April 4th, to warrant the assessment of the tax upon which the defendant took the property in question. But it is claimed by the plaintiff's counsel that by showing that seven of the sixteen votes in the affirmative of the vote to build were illegal, thus leaving a majority of the legal votes in the negative, the record of that vote is to have the same effect as if it showed that the vote was *not* to build a new school-house ; and that by the rules of parliamentary proceedings the same subject

could not legally be again entertained or acted upon at that or any adjourned meeting; and hence that all the votes at the subsequent adjourned meetings, in relation to raising the tax and building the house, were void. But if such parol evidence could be received to render the vote void or annul it as a valid vote in the affirmative, the effect of the evidence would stop there; it would not extend to the establishing of it as a vote in the negative, or give it the same force as if the record showed such vote in the negative. To give that effect would be to prove a vote of the district by parol evidence, which is not permissible. It could no more be regarded by force of that evidence as a vote in the negative, than such vote could be proved by parol if no record had been made on the subject. But treating that vote as a vote in the negative, the district did not thereby lose power over the subject. They certainly could at the same, or at the adjourned meeting, rescind that vote, and proceed to raise a tax for the purpose of building a new school-house, and pass all the necessary votes for its erection. And, having done this without the formality of rescinding the former vote, such proceedings can not be held void even if done in violation of what the plaintiff claims as a parliamentary rule. It would be a novel idea to hold a statute invalid because passed in violation of such parliamentary rule; and a school district ought not to be held to a more strict compliance with parliamentary practice than a legislative body.

It is insisted that the school district had no right by law to unite as it did with the incorporated association called the Clarendon Town Hall and Literary Association, in building the house; and that the vote to do so, and the erection of the building, in pursuance of that vote, two stories high, 34 by 50 feet, in connection with the Association, on the lot purchased by the district, the lower story to belong to the district and the upper story to said Association, rendered the vote to raise the tax to build a new school-house void. We are unable to see any objection, either in principle or policy, to the erection of a school-house by the school district in this manner; or any want of authority for that purpose. The district and the association are not joint tenants, or tenants in common of the house; the district owns the land and has the title

and the right of exclusive occupancy of that portion of the house required for, and adapted to, the use of a school-house. In some cases it might be matter of economy for a school district to build under such arrangement; especially in villages where building lots are expensive; whether advisable in the particular instance was for the district to judge. In relation to this and the other matters offered to be proved, as to the district not needing so large a house, and as to the money having been injudiciously expended in its erection, it is sufficient to say that when towns and school-districts keep within the limits of their corporate powers, their proceedings in raising and expending money cannot be collaterally impeached and held void because, in the opinion of a court and jury, a less sum would have answered the immediate necessities of the corporation, or the money might have been more judiciously and economically expended.

As to the validity of the rate-bill and warrant, under which the defendant justifies, it appears that, by a vote of the district, one half the tax was to be paid by July 1, and the remainder by September 1, 1868; and that the prudential committee issued two separate rate-bills, each for one half of the tax, against each tax payer, and that several of the taxes were collected upon the first and second rate-bills, but no part of the plaintiff's tax had been collected. The committee then thought best to put the whole tax in one rate-bill, and issued a third rate-bill accordingly as a substitute for the other two, to be collected so far as related to the taxes then unpaid. This bill on its face embraced the whole taxes, paid and unpaid; the plaintiff's tax in this bill being equal to the sum of his tax in the two former bills. The defendant justifies under this third rate-bill and warrant. The plaintiff's counsel insist that the committee had no right to issue more than one rate-bill, and they having issued one legal rate-bill, the one under which the defendant justifies is void. In support of this proposition three cases are referred to. In two of these cases, *Dillingham* v. *Snow et als.*, 5 Mass., 546, and *Williams* v. *School District in Lunenburgh*, 21 Pick., 75, there is nothing that touches the subject. In the other case, *Inglee* v. *Bosworth*, 5 Pick., 500, one point which was made in the case was, whether after a legal assessment and war-

rant had been made and issued by the assessors, upon which a part of the tax had been collected, a re-assessment was valid. MORTON, J., in delivering the opinion, after saying that the first assessment was not void although certain persons therein assessed were not taxable in that parish, disposes of this question by a single remark, that if the first tax was legally assessed, the re-assessment was void. *Pond* v. *Negus et al.*, 3 Mass., 230, is the only authority cited in that case in support of that proposition, in which case the question did not arise. It was agreed in that case that the first assessment and warrant were illegal, and the decision was that the re-assessment was valid. It is true there is a *dictum* of the judge who delivered the opinion, that if the first had been legal the second would have been invalid; and it is evident that it was upon the authority of this *dictum* that the point was so summarily disposed of in *Inglee* v. *Bosworth*. This case of *Inglee* v. *Bosworth* is not entitled to the same weight as an authority as if that question had been the one on which the case necessarily must have turned; for the justification, as appears from the opinion in that case, failed for the reason that the plaintiff had ceased to be a member of that parish and was not liable to be assessed or to pay taxes in that parish. But even if that point was correctly decided in that case, it does not necessarily control the case at bar. There is an important distinction between that case and this. In that case every tax payer, some of whom had paid their tax under the first assessment, was assessed a greater sum in the re-assessment than in the first; whereas in this case, the third rate-bill was just the sum of the two former ones, and the same thing except in form, and may properly be regarded as legally identical. It is not a new assessment, but a new rate-bill based on the first assessment. If the two former rate-bills were void, it is not denied that the third one was good. We think the more proper way would have been to put the whole tax in one rate-bill; but the issuing of the two former ones, whether they were valid or invalid, did not render the third one void.

As to the exception to the parol evidence to prove the contents of the notices of sale posted up by the defendant, whether such papers come within the rule or not, requiring the paper to be pro-

duced or the loss proved, the evidence was sufficient to warrant the court in presuming the loss after such lapse of time; and if that fact is necessary to justify the ruling of the county court, we are bound to infer that the court so found. Error is not to be presumed against evidence tending to show such facts as would make the ruling legal.

Judgment affirmed.