MARY A. GILMORE *vs.* THE KNIGHTS OF COLUMBUS.

* First Judicial District, Hartford, May Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The plaintiff's brother became a member of the defendant organization —a fraternal benefit association—under an express agreement that he was to forfeit his membership if he engaged in any occupation which was then, or which might thereafter be, deemed extra hazard-

--------

* Transferred from the second judicial district.

ous. *Held* that he was bound by a reasonable amendment subsequently made to the list of extra hazardous occupations, although the amendment itself contained no provision making it retroactive.

An enlargement of the list of extra hazardous occupations so as to include that of a "switchman," is a reasonable amendment.

Argued May 4th—decided June 14th, 1904.

ACTION to recover the amount of a death benefit, brought to the Superior Court in New London County and tried to the jury before *Roraback, J.;* verdict and judgment for the plaintiff for $1,133, and appeal by the defendant. *Error and new trial granted.*

*James E. McConnell* of Fitchburg, Massachusetts, for the appellant (defendant).

*Abel P. Tanner* and *Herbert W. Rathbun*, for the appellee (plaintiff).

TORRANCE, C. J. The defendant is a fraternal benefit society organized under the laws of this State, of which, in his lifetime, Dennis W. Gilmore, now deceased, was an insurance member. To him it issued what is called an endowment voucher, entitling his beneficiary conditionally, upon Gilmore's death, to the sum of $1,000. The plaintiff is his beneficiary, and brought this suit to recover that sum. The defendant refused to pay, on the ground that Gilmore at the time of his death was engaged in the occupation either of "freight brakeman" or of "switchman," contrary to the rules of the society; and that by reason thereof nothing was due to the plaintiff.

It appeared by the evidence that Gilmore became a member of the defendant society in November, 1899. At that time its by-laws put the occupation of "freight brakeman" in the list of occupations known as extra hazardous; but the occupation of "switchman" was not then in that list. In June, 1900, the by-laws of the defendant were amended so as to include the occupation of "switchman" in the list of extra hazardous occupations. One of the important ques-

tions in the trial below was whether Gilmore was affected by that amendment. The defendant had offered evidence tending to show that at the time of his death Gilmore was engaged in the occupation either of " freight brakeman " or of " switchman "; and that he began such occupation about March 1st, 1901, and was killed while engaged therein in the month of April, 1901. The defendant asked the court, in effect, to charge the jury that if they found that Gilmore, at the time of his death, was engaged in the occupation of " switchman," their verdict should be for the defendant. The court refused to so charge ; and, on the contrary, charged in effect that the amendment did not affect Gilmore. The only errors assigned upon this appeal are that the court erred in refusing to charge as requested, and in charging upon the point in question as it did.

The application made by Gilmore at the time he was admitted to membership was laid in evidence, and it contained, among others, the following provisions : " That if I engage in any occupation which shall be deemed extra hazardous or *prima facie* extra hazardous, by the board of directors, or their successors, I shall thereby forfeit my membership in the Order together with all payments made by me. . . . That I shall conform to and abide by the constitution, by-laws, rules and regulations, of said Order, and of any council thereof, of which I may at any time be a member, which may now be in force, or which may at any time hereafter be adopted by the proper authorities, or submit to the penalty now or hereafter provided for the breach or violation of such constitution, by-laws, rules or regulations." It also contained a statement that his occupation was that of " fireman." He was then a fireman in a mill. The endowment voucher was also laid in evidence, and it contained, among others, the following statement relating to Gilmore : " He is therefore, by these presents and by virtue of the laws and rules of the Order, hereby declared to be possessed of all the advantages and responsibilities imposed by said or future laws or rules thereof, during his continuance of legal membership therein." Certain parts of the by-laws of the defendant were also laid in evidence,

containing, among others, the following provisions: " Sec.
196. No person shall be admitted as an insurance member
of the Order or he or his beneficiaries receive any benefits
therefrom, whose occupation is extra hazardous, or *prima
facie* extra hazardous, or is deemed by the board of direct-
ors to be extra hazardous, or *prima facie* hazardous. . .. .
Sec. 197. Any insurance member who shall thereafter engage
in any occupation deemed *prima facie* extra hazardous by
the board of directors shall *ipso facto* forfeit his membership
in the Order, and his beneficiaries have no claim against the
Order for death benefits. . . ."

The vote of the directors, passed June 26th, 1900, putting
the occupation of " switchman " in the list of extra hazard-
ous risks, was also laid in evidence.    It merely showed
that at a meeting of the board of directors " the list of extra
hazardous risks as revised is as follows," followed by the
list including " switchman " and other occupations not there-
tofore upon it; and that it was " Voted, That the list of
extra hazardous risks be adopted."

It thus appears in the application made by Gilmore, that
he agreed not only not to engage in any occupation then
deemed extra hazardous by the then directors, but also not
to engage in any occupation which should be deemed haz-
ardous by " their successors "; and that he would not only
conform to the laws and rules of the defendant then in force,
but also to those " which may at any time hereafter be
adopted by the proper authorities."    His endowment voucher
was based not only upon the then existing laws and rules of
the order, but also upon " future laws or rules thereof."
Section 196 of the by-laws provides that no person shall be
admitted as an insurance member whose occupation is in the
extra hazardous list; and § 197 provides that any admitted
member who shall " thereafter engage " in any occupation
deemed to be extra hazardous shall *ipso facto* forfeit his
membership in the order.

These provisions contained in the application, endow-
ment voucher, and by-laws, clearly show that the defend-
ant reserved the right to amend its list of prohibited

occupations in the future as against Gilmore, and his agreement to be bound by such future amendments. Under such circumstances the courts are substantially agreed that a future amendment, if reasonable, binds the consenting member, although they may differ as to whether a given amendment of this kind is a reasonable one. *Supreme Lodge K. of P.* v. *La Malta,* 95 Tenn. 157; *Supreme Lodge K. of P.* v. *Knight,* 117 Ind. 489; *Thibert* v. *Supreme Lodge K. of H.,* 78 Minn. 448; *Pain* v. *Société St. Jean Baptiste,* 172 Mass. 319; *Supreme Commandery K. of G. R.* v. *Ainsworth,* 71 Ala. 436; *Parish* v. *New York Produce Exchange,* 169 N. Y. 34; *Masonic Mutual Benefit Asso.* v. *Severson,* 71 Conn. 719.

In the case at bar we think the amendment made in June, 1900, was a reasonable one, and the court below so held and properly so held. It also properly held that the amendment was duly made by proper authority; and about this no question was made in the court below.

The court told the jury that Gilmore, in his application, had agreed to be bound by future amendments, and that he would be bound by the amendment here in question, "provided the same was passed in such a manner and form as to give it a retroactive effect"; but that there was nothing in the case to show that the defendant intended to have the amendment apply to those who then were members.

Upon this ground, alone, the court as matter of law instructed the jury, in effect, that if, after the passage of the amendment, Gilmore entered upon the occupation of "switchman" he did not thereby forfeit his rights of membership.

In so charging we think the court erred. The court appears to have held that the amendment was intended to operate only in the future, mainly because it contained no words indicating that it was to operate upon those already members. Notwithstanding this, we think the amendment was intended to affect those who were members when it was passed.

Gilmore had expressly agreed to be bound by such an amendment, and so presumably had all his fellow members of that time; and a provision in the amendment that it should

apply to them was unnecessary, and would have been super-
fluous. They had agreed that it should apply to them, and
there is nothing in the vote to indicate that it was the inten-
tion of the directors that it should not. Again, it is the aim
of the society that the benefits and burdens of its insured
members shall be equal; but this equality would, in some
measure, be destroyed by making old members subject to one
set of rules and new members to another; and an intention
to bring about such a state of things is not apparent in the
amendment here in question. Reading that amendment in
the light of the circumstances in which it was passed, we
think the court should have told the jury that their verdict
should be for the defendant if they found that Gilmore had
engaged in the occupation of "switchman" after the pas-
sage of the amendment.

There is error and a new trial is granted.

In this opinion the other judges concurred.