EMILY RODRIGUES, MAGGIE RODRIGUES, EDDIE
RODRIGUES, HERBERT RODRIGUES AND EVA
RODRIGUES, MINORS, BY THEIR NEXT
FRIEND, JOAQUIM GARCIA, *v.* THE PORTU-
GUESE MUTUAL BENEFIT SOCIETY OF HA-
WAII.

ORIGINAL.

ARGUED APRIL 4, 1907.            DECIDED MAY 15, 1907.

FREAR, C.J., HARTWELL AND WILDER, JJ.

MUTUAL BENEFIT ASSOCIATION—*effect of change of by-law.*

R., as member of the defendant society, a corporation, from Au-
gust 25, 1889, paid his monthly dues and received no benefit until
his death April 3, 1904, a period of over fourteen years. A by-law
of the society when he became a member provided as follows: "The
society gives the following assistance to * * * children of its
members: To the children of less than 12 years of age, orphans of
members who during 10 years have contributed without having
received benefits, the society shall give a pension until they com-
plete the age of 12 years. This benefit shall be of 50 cents daily
if member belongs to the first class and of 25 cents if to the second
class." November 20, 1903, a little over four years after the end of
the ten years of his membership and a little more than four months
before his death, the by-law was amended by substituting fifteen
years for ten years. R. did not consent to the change but, being a
resident of Wailuku, was not entitled to notice of meetings which
was required to be given only to residents of Honolulu. Held,
Frear, C. J., dissenting, the amended by-law did not affect the pen-
sion right acquired under the by-law prescribing ten years as the
term and does not purport to apply to such cases.

OPINION OF THE COURT BY HARTWELL. J.

(Frear, C. J., dissenting.)

This is a submission upon agreed facts. A. J. Rodrigues
became a member of the defendant society, a corporation, on

August 25, 1889. At that time one of the by-laws of the society provided as follows: "The society gives the following assistance to * * * children of its members: To the children of less than 12 years of age, orphans of members who during 10 years have contributed without having received benefits, the society shall give a pension until they complete the age of 12 years. This benefit shall be of 50 cents daily if member belongs to the first class and of 25 cents if to the second class." Rodrigues was a member of the first class and continued such until his death, April 3, 1904, contributing all dues and assessments levied and receiving no benefits. On November 20, 1903, that is, nearly four years after the expiration of the first ten years of his membership and a little more than four months before his death, this by-law was amended by substituting the period of fifteen years for that of ten years. Rodrigues never consented to this change in the by-law but, being a resident of Wailuku, was not entitled to notice of meetings which was required to be given only to members residing in Honolulu. The plaintiffs are the children of the said Rodrigues and were under twelve years of age when he died. They claim the pension of fifty cents a day from the death of their father until their arrival at the age of twelve years, under the original by-law. The society refuses to pay on the ground that their father had not fulfilled the conditions of the amended by-law in that he had not continued a contributing member for fifteen years without receiving benefits. The by-laws, as they stood when Rodrigues joined the society, provided also that "the general assembly shall have the right to interpret and alter the by-laws;" also that one of the objects of the society was "to aid the orphan children of deceased members as long as the financial standing of the society will permit it." The society at all the times mentioned was in a prosperous financial condition. This much appears from the submission.

The by-laws, as a whole, which are in Portuguese, are not made a part of the submission. It appears from a translation of a portion of them, furnished by counsel upon request, as

they were when Rodrigues joined, that other objects of the society were to aid members when sick or when by sickness or advanced age they were unable to obtain the necessary means of existence, and to provide funerals for members; that every member had the right to be aided in the cases and by the means indicated by the by-laws, and that at his death the orphans should be pensioned and his widow, children, parents and brothers, fulfilling the required conditions, should receive the full amount of the death benefit collected from members in conformity with the by-laws; also that the benefits of the orphan children might be suspended wholly or in part when their continuance would threaten the existence of the society; that a member who had received benefits during the first ten years might refund the same to the society so as to give him the rights of one who had not received benefits during that period, and that the widow or person in charge of the orphans of any member who had paid more than nine years' dues without receiving benefits might continue to pay the monthly dues until the ten years were completed in order to entitle the children to receive the prescribed pension. It does not appear that any policy was issued to Rodrigues or that any contract was made with him other than that contained by implication in the by-laws. A translation, furnished by counsel upon request, of the regular form of the certificate or diploma of membership issued by the society shows merely a statement that the member, describing him, matriculated on a certain day and paid certain fees.

The claim of the plaintiffs is that their father, Rodrigues, by payment of monthly dues without receipt of benefits for the term of ten years secured to them the right to the pension provided by the by-laws in force during that time, subject only to his continuing his membership for the rest of his lifetime, and that this right was not subject to be defeated by a subsequent by-law increasing the term for payment of dues to fifteen years.

The defendant claims that until a member's death no pension right accrues since by the contract of membership the by-laws are subject to amendment.

Did, then, Rodrigues' payment of dues for ten years without receipt of benefits secure an absolute right that his children should be pensioned if he remained a member until his death or merely secure a right defeasible by a new by-law against the operation of which his agreement that the by-laws could be amended precluded him from complaining? Conceding that the only limits of the power of such an association to amend its by-laws are (1) that the amended by-laws shall not frustrate any of its essential objects, (2) shall be of reasonably uniform application and (3) shall not manifestly be unreasonable or oppressive, it cannot be said that the change made in this case exceeds such limits. While the power to amend by-laws does not authorize imposing new conditions which are oppressive or unfair, a large discretion must be left to the association in determining what course will best subserve its interests. How much money shall be paid to a sick or invalid member or to his family and for how long a period, and how much, if any, pension shall be paid to his orphan children upon his decease are matters of administration which cannot be fixed by permanent rules. When by a change of rules the aid to be awarded to sick or invalid members or to their families is reduced in amount or duration all members are equally affected and none can complain. There is nothing unfair or unreasonable in such changes per se and they are all necessarily prospective in their operation.

Regarding the case as presenting merely a question of reasonable exercise of power to amend by-laws and not a case of a contractual relation established between a member and the association nor depending upon the construction of the amended by-law to determine whether it is retroactive in effect or applicable to those cases only in which payment of dues had not been made for the full term of ten years, the result would be that the plaintiffs would not be entitled to a pension.

But if any contractual relation between a member and the association can ever be established during his lifetime, not subject to the condition that it may be altered by the association, the relation was established in this case. The obligation of the association and the right of the member were as definitely fixed as if a stated sum of money was required by the original by-laws to be paid to the member himself at the end of the ten years. The facts that the amount of money to be paid to his children depended upon their age and that it was payable in futuro, if at all, and only if his membership continued until his death, do not affect the nature of the obligation or lessen its binding force. It may be true that a member's right to any specified sick or invalid benefit is not secured by by-laws in force prior to his becoming sick or an invalid, if at all, and that such right is liable to be modified in respect of the amount or duration of the benefit by new by-laws; but upon the occurrence of his sickness or invalidism the right accrues and cannot be repudiated by the association.

Moreover, there is no obvious reason for treating this amended by-law as intended to be applied to cases in which the condition for securing a pension payable in futuro has been performed. No right was acquired prior to the end of the ten years. Before then a member would properly regard his status as subject to new by-laws imposing new conditions for securing the pension, as, for instance, higher monthly dues or payment for a longer term, but his right was fixed upon the end of the original term. As a question of construction the natural and just inference is that the new by-law was not intended to annul the status existing when the ten years had elapsed or to release the association from the obligation which it had then incurred.

*Figure v. Mutual Society,* 43 Vt. 362, is the only case to which our attention has been called which goes to the length of holding that after a member's death the aid to his widow secured by the by-laws in his lifetime can be reduced, or, in other words, that without an independent contract no right under the by-laws can be acquired during a member's lifetime.

A majority of the court are of the opinion that the amended by-law extending to fifteen years the term of payment of dues required to secure a pension for children does not affect a pension right previously acquired under the by-laws prescribing ten years as the term, and also that the amended by-law does not purport to apply to such cases.

The plaintiffs may take judgment accordingly.

*E. A. Douthitt* for plaintiffs.

*E. M. Watson* for defendant.

### DISSENTING OPINION OF FREAR, C.J.

The question, as it seems to me, comes down to one of general power—whether the society could, after the expiration of the time originally prescribed but still within the life of the member, extend the time during which he must have been a member in good standing paying his dues and receiving no benefits in order to entitle his children under twelve years of age to a pension after his death. It is impossible to hold as a matter of construction that the amendment applied only to future members or only to such members and members of less than ten years' standing. See cases infra. Such a construction would be purely arbitrary. Nor are there any special circumstances which would make the amendment inoperative in this case if the society had power to make such an amendment in general. There is no pretense that it was made arbitrarily or in bad faith or otherwise than for the best interests of the society at large or that it was outside of the declared objects of the society. It does not appear that this member had been entitled to receive any benefits during the first ten years of his membership and that therefore he made any special sacrifice in not receiving benefits during that period; it does appear that he did not receive any benefits up to the time the amendment was made and that therefore he was not deprived, by reason of having accepted benefits after the ten years, of the opportunity of taking advantage of the by-law as amended. It is true the society had at all times been in a

prosperous condition, but that may have been because of just such amendments as this made from time to time in order to avoid getting into bad financial condition, and I presume the general power to amend the by-laws by reducing or increasing the various classes of benefits or dues or assessments does not depend upon the question of the financial condition of the society for the time being. The amendment may have been made, in the light of experience, for the purpose of better adjusting benefits to dues, that is, the amount insured to the cost of insurance.

Whether the amendment could be made so as to affect the present case depends upon whether the rights in question had become fixed upon the expiration of the first ten years of membership. Whether those rights had become fixed or not depends upon the relation between the society and the member at that time.

If the relation had become that of debtor and creditor, of course the society could not repudiate its debt—as in the case of sick benefits already accrued or in the case of a death benefit after death had occurred. *Brown v. Carter,* 15 Haw. 333, 342.

If the relation had been one created by independent contract, as, for instance, as is often the case, by a contract contained in the certificate of membership, in the nature of a policy of insurance, absolute in its terms, of course it could not be altered by one party to it whether through an amendment of the by-laws or otherwise without the assent of the other. In such case the rights would be fixed the moment the member joined and would not be dependent even upon the expiration of the ten years. But even when there is a separate specific contract it is generally by its terms made more or less subject to the by-laws as they exist at the time or may be subsequently amended, in which case the contract is alterable by amendments of by-laws to the extent to which that has been agreed, and the question then generally is to what extent has it been so agreed. This depends, as a matter of construction, upon the language of the agreement, the nature of the subject matter of the con-

tract and of the amendment, and the general character of the society. The contract may be so worded as to show that it was to be wholly subject to control by the by-laws or merely that the member was to conform to the by-laws so far as his duties of membership were concerned; the subject matter of the amendment and contract may be such as to tend to show that it could not have been within the contemplation of the parties that the contract should be controlled by the by-laws in that particular; the nature of the society as a joint undertaking for mutual aid requiring changes in the by-laws from time to time to enable it to accomplish its purposes may tend to show that a possible necessity of such an amendment must have been contemplated. One party to a contract cannot complain of a change made by the other when that is authorized by the contract itself. In such case the change is made in pursuance of the contract, not in violation of it. In the present case there was no independent contract, and yet decisions in cases in which there were such contracts throw much light on the present case by their reasoning and because of the extent to which they have gone in holding such contracts subject to amendments of by-laws under agreements contained in them to comply with, conform to, abide by the by-laws, etc. A number of the most instructive cases will be referred to but without further comment than that the question running through nearly all of them is as to the extent to which the contract has by its terms been made subject to or independent of the by-laws present and future—the idea being that in so far as the contract is made by its terms subject to the by-laws, or, to put it differently, except in so far as there is a contract independent of the by-laws, the rights of the member and his beneficiaries are subject to alteration by amendments until they have become fixed by the establishment of the relation of debtor and creditor. Cases holding that the agreement did not authorize what was practically a reduction in the amount of the policy: *Newhall v. Am. Legion of Honor,* 181 Mass. 111; *Porter v. Same,* 183 Mass. 326; *Makely v. Same,* 133 N. C. 367; *Gaut v. Same,* 107

Tenn. 603 (64 S. W. 1070); *Russ v. Same,* 110 La. 588;
*O'Neill v. Same,* 70 N. J. L. 410; *Langan v. Same,* 174 N. Y.
266; *Same v. Jordan,* 117 Ga. 808 (45 S. E. 33); *Same v.
Getz,* 112 Fed. 119. See also *Knights Templars v. Jarman,*
104 Fed. 638; *Hale v. Eq. Aid Union,* 168 Pa. St. 377; *Beech
v. Supreme Tent,* 177 N. Y. 100. Cases sustaining amend-
ments which forfeit policies in case of suicide, whether sane
or insane, or which, if such condition was already imposed for
a limited period, extend the period even after the original
period had expired: *Chambers v. Knights of Maccabees,* 200
Pa. St. 244; *Supreme Lodge v. La Malta,* 95 Tenn. 157 (30
L. R. A. 138); *Supreme Commandery v. Ainsworth,* 71 Ala.
436; *Hughes v. Wisconsin, etc., Co.,* 98 Wis. 292; *Daughtry
v. Knights of Pythias,* 48 La. An. 1203; *Supreme Lodge v.
Same,* 179 Ill. 344; *Scow v. Supreme Council,* 223 Ill. 32;
*Tisch v. Protective H. C.,* 72 Oh. St. 233; *Court of Honor v.
Hutchens,* 79 N. E. (Ind. App.) 409; *Eversberg v. Supreme
Tent,* 33 Tex. Civ. App. 549. Contra: *Weber v. Knights of
Maccabees,* 172 N. Y. 490; *Shipman v. Protective H. C.,* 174
N. Y. 398; *Sautler v. Supreme Conclave,* 62 Atl. (N. J.) 29;
*Morton v. Supreme Council,* 100 Mo. App. 76 (73 S. W. 259),
the courts holding in these cases that the agreement did not
go so far as to permit amendments of the by-laws in this respect.
Cases permitting the addition of other occupations to the origi-
nal list of occupations excepted as extra-hazardous: *Loeffler
v. Modern Woodmen of Am.,* 100 Wis. 79; *Strang v. Camden
Lodge,* 64 Atl. (N. J.) 93; *Moerschbaecher v. Royal League,*
188 Ill. 9; *Gilmore v. Knights of Columbus,* 77 Conn. 58;
*Ellerbe v. Faust,* 119 Mo. 653. Contra: *Hobbs v. Iowa M.
B. A.,* 82 Ia. 107 (because there was no agreement as to future
by-laws); *Tebo v. Supreme Council,* 89 Minn. 3 (holding that
this could not be done, at least without notice to the member
that the amendment had been made). Cases sustaining changes
in the rate of assessment: *Reynolds v. Supreme Council,* 192
Mass. — (78 N. E. 129); *Gaines v. Same,* 140 Fed. 978; *Gaut
v. Mutual, etc., Ass'n..* 121 Fed. 403; *Fullenwider v. Supreme*

*Council,* 180 Ill. 621; *Barbot v. Same,* 100 Ga. 681 (28 S. E. 498); *Plunkett v. Supreme Conclave,* 55 S. E. (Va.) 9.  Contra: *Covenant M.'L. Ass'n. v. Kentner,* 188 Ill. 431 (because there was no agreement as to future by-laws); *Miller v. Tuttle,* 73 Pac. (Kans.) 88 (court divided four to three on question whether there was independent contract or not); *Ebert v. Mutual Ass'n.,* 81 Minn. 116; *Strauss v. Same,* 126 N. C. 971; *Benjamin v. Same,* 146 Cal. 34.  Cases sustaining amendments limiting causes insured against, as by defining broken arm or leg or omitting paralysis: *Ross v. Brotherhood of Am.,* 120 Ia., 692; *Van Atten v. Modern B. of Am.,* 108 N. W. (Ia.) 313.  Contra: *Starling v. Supreme Council,* 108 Mich. 440.  Cases sustaining amendments limiting beneficiaries: *Baldwin v. Begley,* 185 Ill. 180.  Contra: *Peterson v. Gibson,* 191 Ill. 365 (because there was no agreement as to future by-laws); *Wist v. Grand Lodge,* 22 Ore. 271 (because of special circumstances); *Emmons v. Supreme Conclave,* 63 Atl. (Del.) 871. See also *Supreme Lodge v. Knight,* 117 Ind. 489, a leading case; *Richmond v. Supreme Lodge,* 100 Mo. App. 8 (71 S. W. 736), and *Wright v. Minnesota, etc. Co.,* 193 U. S. 657.

In the present case the relation at the outset was merely that of society and member.  There was no independent contract.  The question is whether that relation changed upon the expiration of the ten years so as to make the rights in question vested or fixed as in the case of an absolute independent contract or a case in which the relation has ripened into that of debtor and creditor.  As we have seen, even a separate specific contract is subject to amendments of the by-laws to the extent to which that is agreed.  When there is no such contract, the contract, in so far as there is one, is merely one of membership, the provisions of which are found in the by-laws alone or other like instruments.  But the by-laws are subject to amendment except so far as otherwise agreed and usually, as in the present case, they contain an express provision permitting amendments of any of them without exception.  In such case it would seem that all members are bound by all amendments except such

as are made arbitrarily or in bad faith or without the purposes
of the society or such as impair accrued absolute rights.   The
only question is, when do the rights become absolute?   Under
circumstances like the present the amendment might have been
attempted during the ten years or after the ten years but during
the life of the member or after his death.   That it could have
been made before the expiration of the ten years is clear, both
on principle and by practical unanimity of decisions.   One
court, in *Figure v. Mutual Society,* 43 Vt. 362, a case often
cited with approval, went so far as to hold that the amendment
could be made even after the death of the member so far as
amounts yet to accrue after the amendment was made were
concerned, but the contrary view seems to have been enter-
tained in *Grundlach v. Germania M. Ass'n.,* 4 Hun. 339, the
decision in which, however, was said in a later case cited below
from the same jurisdiction not to go so far.   The question
here, however, is whether the amendment could be made before
death.   If it could not be made before death though after the
ten years, it is difficult to see how it could be made before the
expiration of the ten years but after the contract of member-
ship had been entered into and the member had paid his dues
and received no benefits up to the date of the amendment.   The
contract, if any, was made at the outset.   The right of the
member had not become a vested right after the expiration of
the ten years any more than before, and in either case in so far
as it was a right it was one which by the very terms of the
instrument, namely, the by-laws, by which it was created, was
subject to be divested in the manner prescribed.   Moreover,
there were conditions yet to be performed or fulfilled; the
member had to continue such in good standing until his death;
his death had to occur; he must have left children under twelve
year of age.   The obligation had not become at the end of ten
years a mere debt payable at a future time.   The member had
duties, such as payment of dues, etc., to perform so long as he
remained a member, and so long as he remained a member he
was subject to the provisions of the by-laws which constituted

the contract of membership. If membership ceased before his death, all rights were forfeited. Again, the society was a joint venture for mutual aid, and the amount of aid that could be given from time to time depended on various circumstances. It was contemplated that all members should be on an equal footing as to rights and duties. If the amendment should be applied to some and not to others it would result in a division of the members into two classes with unequal rights as to future benefits. The ten-year requirement operated merely to classify the members with reference to benefits. The by-laws, which, though not a part of the submission, have been furnished by counsel are very elaborate. They provide for many kinds of aid—sick benefits, invalid benefits, death benefits, pensions, etc. One class of benefits may be enjoyed only after a membership of one year, another class only after a membership of three years, the class in question only after a membership of ten years, etc. These provisions, while not a part of the submission, may serve by way of illustration as to what the by-laws in any society of this kind may be. To hold that they cannot be amended after the expiration of one year, three years, ten years, etc., respectively, would be practically to hold that none of the by-laws in regard to benefits may be amended and that the society is tied up for all time, for probably it could never make such amendments without affecting some members in respect of whom such periods had expired, or, if such members were not to be affected classes would be created with unequal rights. That might frustrate the purposes of the society and jeopardize its very existence.

This conclusion is supported by strong reasoning in the following cases in which the contracts were, as in the present case, only contracts of membership: *Pain v. Société St. Jean Baptiste,* 172 Mass. 319; *Stohr v. Musical F. Society,* 82 Cal. 557; *Poultney v. Bachman,* 31 Hun. 49; *McCabe v. Father Matthew T. A. R. Society,* 24 Hun. 149; *Smith v. Galloway* (1898) 1 Q. B. D. 71; *Pepe v. City, etc., Society* (1893), 2 Ch. Div. 311. The only cases contra, so far as I am aware, are *Becker v. Berlin*

*Ben. Society,* 144 Pa. St. 232, and *Marshall v. Pilots Union,* 206 Pa. St. 182, and perhaps even those may be distinguished from the present case if not from the other cases just cited, on the ground that the event, namely sickness, upon which the right to benefits was to begin, had occurred, while in the present case the event, namely death, had not occurred.