### No. 9193.

SAWYER, ET AL. *v*. HEADCAMP PACIFIC JURISDICTION WOOD-
MEN OF THE WORLD.

BENEFIT SOCIETY—*Change of By-Law—Retro-active Effect.* A change
in the by-laws of a benefit society is not to be construed as op-
erating retroactively, uness specifically extended to prior con-
tracts.

*Error to Jefferson District Court, Hon. J. C. Wiley, Judge.*

Messrs. QUAINTANCE, KING & QUAINTANCE, for plaintiffs
in error.

Mr. GEORGE P. STEELE, for defendant in error.

Mr. Justice Bailey delivered the opinion of the court.

PLAINTIFFS brought suit to recover under a certificate of,
insurance issued by the Head Camp Pacific Jurisdiction,
Woodmen of the World, upon the life of George W. Sawyer,
naming them as beneficiaries. Defendant, a fraternal in-
surance corporation operating under a lodge system, is-
sued the certificate in 1900. Sawyer died in January, 1914.
Defendant denied liability under the certificate on the
ground that deceased was in arrears in payment of his as-
sessments at the time of his death. Trial was to the court
and findings were for the defendant. Plaintiffs allege error
and bring the cause here for review.

When Sawyer became a member of the organization in,
1900 its constitution contained the following provision:

"Any benefit member of any camp who, while in good
standing, becomes sick or disabled, and on account thereof
is unable or finds it difficult to continue payment on bene-
fit assessments and camp dues, during such illness or dis-
ability, may, nevertheless, continue to be in good standing
on the following terms, and not otherwise, viz:

"Prior to becoming delinquent, he shall notify the clerk
of his camp of his illness or disability and consequent de-
sire that the camp maintain him in good standing, and de-
liver to said clerk the certificate of a physician concerning

his said illness and the nature thereof; thereupon the clerk, on being satisfied that such illness or disability exists, shall inform the counsel commander and banker thereof. In such cases, the member, until he recovers from the illness or disability, shall not be required to pay his camp dues, but during such time the *per capita* tax due on account of said member of the Head Camp shall, from month to month, be remitted to the head camp from the general fund of the camp, and during each month for which assessments are called, a warrant shall be drawn on the general fund of the camp, payable to the clerk for its benefit fund, to pay the assessments due from sick or disabled benefit members. To obtain the benefit of this section, a member must give notice to the clerk before he becomes delinquent, except in such extraordinary cases of sudden illness or accident to a member in good standing which renders it impossible for the member to give notice before becoming delinquent."

In 1910 the above section was repealed and the following adopted:

"Any benefit member of any camp who, while in good standing becomes sick or disabled and on account thereof is unable to pay his dues or assessments, he shall send or cause to be sent to the clerk of his camp notice in writing of said disability prior to becoming delinquent, thereupon the clerk, on being satisfied of such disability shall inform said camp, which shall keep said neighbor in good standing during said disability, but not to exceed three months."

The benefit certificate issued to Sawyer contained the following provision:

"This certificate is hereby made expressly subject to all conditions endorsed hereon, and are made a part hereof, and also to all conditions named in the constitution of said association and the by-laws of said camp. It shall not be in force at any time when said member stands suspended and is not in good standing, pursuant to said constitution and by-laws now in force, or hereafter regularly adopted and in force at the time of his death."

It appears that Sawyer kept his lodge dues and assessments paid from the time he became a member in 1900 until August, 1913. At about that time he became insane, and remained in that condition until he died, in January, 1914. The clerk of the local camp of which Sawyer was a member was duly notified of the condition of the insured; and as far as the abstract is concerned, there is no evidence that the head camp did not receive from the local camp all assessments due on account of the certificate under consideration.

The only question to be determined is whether the amendment to the constitution in relation to payment of assessments by local camps may be considered to have a retroactive effect, in view of the stipulation in the insurance contract as set out above.

A careful reading of the cases cited by both parties discloses a sharp conflict of opinion. In a summary of authorities in 29 Cyc. 72, it is said:

"The rule that statutes will be construed as operating prospectively only unless it is clear that the legislature intended them to operate retrospectively applies to statutes relating to beneficial associations; and apart from this they cannot be given a retrospective operation if, thus operating, they would interfere with vested rights or impair the obligation of pre-existing contracts. A like rule applies to alterations made in the constitution and by-laws of a society whether by amendment, or repeal of existing provisions or by the enactment of new provisions. Accordingly such alterations will be given a prospective operation unless it clearly appears that they were intended to operate retrospectively; and even where a retrospective operation was intended, the alterations do not govern the rights and liabilities of pre-existing members and their beneficiaries if vested rights would thereby be defeated, or the obligation of contracts be impaired."

In discussing the same question, 19 R. C. L. 1213, is as follows:

"As a general rule, amendments to the constitution and by-laws of benevolent and beneficial associations will be construed as operating only on cases or facts that come into existence after their adoption, and will not be interpreted to be retroactive in their effect unless by their terms it is perfectly manifest that they were intended to be so. While a member in making a contract may agree with the association that he will be bound by the constitution and by-laws existing at the time the agreement is made and by any law that may thereafter be legally adopted, he is entitled to rely upon the contract and conditions as made until the lawmaking power of the organization enacts legislation which by its terms applies to his contract. Consequently even where a benefit society has reserved the power to amend its by-laws, so as to affect pre-existing members, a by-law subsequently enacted will not be construed as intended to apply to such previous contract unless its intention that it should have a retrospective operation is clearly manifested; or as is sometimes said the intention that an amendment should operate retrospectively never exists by mere implication, and to give it such effect the language used must be clear and not doubtful."

The general rule as above set out was approved in *Pittinger v. Pittinger,* 28 Colo. 308, 64 Pac. 195, 89 Am. St. 193, where one of the questions determined was whether a by-law of a mutual life and accident association permitting a change of beneficiary, without consent of the latter, could be enforced under a certificate issued prior to the passage of the by-law. In construing the by-law in question this court, at page 315, said:

"Further than this, laws will not be construed as retrospective in their operation unless it is clear that they were intended to be so. This rule for the interpretation of statutes has frequently been applied in construing the by-laws of associations of a character similar to the one issuing the policies in this case. *Wist v. Grand Lodge A. O. U. W.,* 22 Or. 271, 29 Pac. 610, 29 Am. St. 603; *Benton v.*

*Brotherhood of R. R. B.,* 146 Ill. 570, 34 N. E. 939; *Roxbury Lodge v. Hocking,* 60 N. J. L. 439, 38 Atl. 693, 64 Am. St. 596.

"There is nothing in the by-laws in question which would indicate that it was the intention of the association that it should affect policies theretofore issued. The judgment of the district court is affirmed."

The same question was discussed in *Head Camp Woodmen of the World v. Irish,* 23 Colo. App. 85, 127 Pac. 918, where the benefit certificate provided that it was "subject to all conditions named in this certificate, and named in its fundamental laws, and liable to forfeiture if said member shall not comply with said conditions, laws, and such by-laws and rules as are or may be adopted by the head camp, or the local camp of which he is a member." The court held:

"In a case like this, where the certificate sued upon contains such a clause, the insured is bound by any reasonable by-law thereafter legally adopted. *Head Camp Woodmen of the World v. Woods,* 34 Colo. 1, 81 Pac. 261, subject to the settled rule of construction, that it will not be given a retroactive force unless such intention is clearly disclosed by the terms thereof. The question, therefore, to be considered is, was the by-law intended to have such retroactive force as would require the assured to accept either one of the options provided. * * *

"On this proposition Mr. Niblack, in his work on Benefit Societies, etc., in section 27, pages 64 and 65, states the rule as follows: "Members may contract with reference to laws of future enactment—may agree to be bound by any future by-laws or amendments which may be passed by the society, as if they were existing at the date of the contract. They may consent that new by-laws or amendments shall enter into and form parts of their contract, modifying or varying them. But the fact that a member has consented to be bound by future laws or amendments does not alter the rule that they will be given a prospective opera-

tion in the absence of a clear intent that they shall act retrospectively.

"Retroactive by-laws are regarded as impolitic and unwise, and they may often be said to be unjust, and oppressive. Although they may in a given case be valid, they will always be subjected to such construction as will circumscribe their operation within the narrowest possible limits, consistent with the manifest intention of the society as indicated by the language used."

Continuing, the court quotes from section 187, Bacon on Benefit Societies, as follows:

"It is a settled rule of construction that laws will not be interpreted to be retrospective unless by the terms it is clearly intended to be so. They are construed as operating only on cases or facts which come into existence after the laws were passed. * * * In fact, so great is the disfavor in which such laws are held, and so generally are they condemned by the courts, that they will not construe any law, no matter how positive in its terms, as intended to interfere with existing contracts or vested rights, unless the intention that it should so operate is expressly declared or is necessarily implied."

In view of the foregoing, the amendment relied upon cannot be held to be retrospective, since it does not specifically cover or extend to contracts made prior to its adoption. This is the only matter which need be considered.

Counsel for defendant cites cases bearing upon the right to pass retrospective by-laws in certain cases, and other citations refer to the question of whether rights had or had not been vested. Since the only question here is whether by its express terms, or by imperative implication, the by-law is retrospective, these decisions are not applicable. They settle law questions which we neither consider nor determine in this case. The only decision cited which holds a different view from the one which we adopt is *Gilmore v. Knights of Columbus,* 77 Conn. 58, 58 Atl. 223, 107 Am. St. 217, 1 Ann. Cas. 715, but we are not bound thereby, and we

are unwilling to follow it, especially as it appears from our own decisions that there is nothing in the by-law in question to indicate any intention to have it apply to existing contracts. This is true without having recourse to the familiar rules that, in order to give effect to contracts of insurance, they are to be liberally construed, and that by-laws of a fraternal insurance company will not, unless imperatively necessary, be given a retroactive effect.

The judgment of the trial court is reversed and the cause remanded, with directions to enter judgment for plaintiffs, according to the terms of the certificate, together with continuing interest on the amount found due from the date of the demand for payment thereof, at the rate of eight per cent per annum.

Judgment reversed and cause remanded, with directions.

Mr. Chief Justice Hill and Mr. Justice Allen concur.