' 73    323
109a  ¹629
,e109a¹630

IRA HEATH

*v.*

SAMUEL F. HURLESS.

1. CHANCERY—*distinction between bill of interpleader and bill in nature of interpleader.* In a bill, in the nature of a bill of interpleader, the complainant seeks, not only to have the conflicting claims of the defendants against himself, which he desires to discharge to the proper parties, adjudicated, but also some affirmative relief, whilst in a bill of interpleader strictly, he only asks that he may be at liberty to pay money or deliver property to the party to whom it of right belongs, and that he may thereafter be protected against the claim of both.

2. SAME—*decree should not go beyond the allegations and prayer of the bill.* A decree which is entirely outside of the allegations and prayer of the bill is erroneous.

3. A bill, in the nature of a bill of interpleader, was filed by one who had sold land with covenants of warranty, against the executor of his grantor, to reach the balance of the purchase money paid by him to such executor, on the ground that the testator, before conveying to the complainant, had conveyed a portion of the same land to one of the defendants in the bill, who was threatening to bring an action of ejectment against the grantee of the complainant, who was also made a defendant to the bill. The bill only prayed to have the money in the hands ·of the executor held by him until the question of title to the land, as between the complainant's grantee and the other claimant of the land, was settled, and that the same be applied, if necessary, to satisfy the covenants of warranty in the deed of

the testator to the complainant: *Held*, that, on such a bill, it was error to render a decree that the party threatening the ejectment suit should convey the land claimed by him to the grantee of the complainant.

4. In such a case, the only inquiry is, was the title of the party threatening the ejectment suit superior to that of the complainant's grantee, and if so, shall the purchase money paid for the land to the executor of the complainant's grantor be applied to make good the testator's covenants of warranty to the complainant, and his covenants to his grantee.

5. If the grantee of complainant claimed that he was entitled to a decree for the conveyance of the land to him, he should, after answering the bill, have filed a cross-bill, setting up his claim, and prayed for such a decree.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Samuel F. Hurless, by his amended bill filed in the court below on the 13th of April, 1868, alleges that, on the 31st day of January, 1865, he purchased of Walter Harmon, since then deceased, certain lands, described in an exhibit thereto annexed, for the sum of $6115.50, being at the rate of $40 per acre; that Harmon made and delivered to him a deed for the lands, by which he covenanted that he was well seized in fee simple of a good, sure and perfect title thereto, and that the same were free from all former bargains, grants, sales, liens, taxes, assessments and incumbrances; that complainant paid all the purchase money, except about $5000, which he secured to be paid, by his note and a mortgage on the premises purchased; that complainant relied on the covenants in the deed; that he entered into possession of the lands under the deed, and occupied the same for one year, when he sold and conveyed them to Henry Deihl, by deed, with like covenants as in the deed from Harmon to himself; that, at the time he conveyed to Deihl, he paid to Charles D. Sanford, executor, etc., of Walter Harmon, deceased, the said $5000, balance of the purchase money due from him for the lands, which sum is still in the hands of Sanford, and not accounted for by him to the county court, or paid out to any creditors of Harmon's estate; that Deihl is threatened by Ira Heath with an action in ejectment, based on a claim made by him to a part of the lands,

by virtue of a deed from Harmon to him, made long prior to
the deed from Harmon to complainant; that Deihl has noti-
fied complainant of the claim of Heath, and requested him to
make good his covenants; that he is advised the estate of Har-
mon is insolvent, and complainant would fail to realize any-
thing from the assets of the estate, in the event of his being
obliged to pay Deihl any sum of money for breach of his
covenants by reason of the claim of Heath; that complainant
paid to Sanford said sum of $5000, in ignorance of the claim
of Heath to any part of the land, and of the insolvency of
Harmon's estate; that complainant, had he not so paid, would
have been entitled to a set-off against the amount due from
him equal to the value of the land which Heath might recover,
and would have been obliged, only, to pay Sanford the balance,
if any. over and above such sum.

The prayer of the bill is, that Deihl and Heath interplead;
that it be ascertained by the court whether the claim of Heath
to any part of the premises is good and valid or not; that
Heath be enjoined from bringing any suit at law against
Deihl; that Sanford be enjoined from mixing said $5000 with
the other assets of the estate, and, in the event of the claim
of Heath being found to be good and valid against any por-
tion of the premises, that Sanford be decreed to return to
complainant such portion of the purchase money as shall be a
just compensation to complainant, etc.

Separate answers were filed by Sanford, Heath and Deihl,
who are all made defendants to the bill.

Sanford's answer denies all the material allegations of the
bill, except that of the insolvency of Harmon's estate, which
is admitted.

Heath, by his answer, denies knowledge of the transaction
between complainant and Harmon, but admits that complain-
ant was in possession of the lands conveyed to him by Har-
mon for about one year. He also admits that, on the 22d day
of April. 1852, and in the lifetime of Harmon, he himself
purchased and received a deed for a part of the land, which he
describes, which Harmon subsequently conveyed to complain-

ant; that the deed was properly recorded, and he still claims to be the owner of the land so conveyed to him.

Deihl, by his answer, admits that he purchased, and received a deed from complainant for the lands described in the bill, as therein stated; that he paid for the same $5670; that a large portion of this amount was paid by complainant to Sanford; that, at the time he purchased these lands, complainant was in possession of the same; that he inquired of Heath as to said lands, who pointed out the same as the land purchased by complainant from Harmon; that, relying on the possession of complainant and the representations of Heath, he purchased the lands, took possession of the same, and has ever since had possession of the same; that Heath was informed by Sanford that a part of the lands were described in a deed from Harmon to Heath, of a date long anterior to the date of the deed from Harmon to complainant, but Heath did not claim it; that, immediately thereafter, Heath came to the defendant Deihl, and claimed possession of said premises, and threatened to bring suit in ejectment to eject him from the same; that complainant had departed from the State of Illinois, and gone to the State of Iowa, intending to remain there; that the money paid by the complainant to Sanford was furnished by the defendant; that complainant had left no property in the State to levy on or attach, and has in no way secured or indemnified the defendant against any loss or damage incident to the defendant being ejected from said premises. The defendant therefore prays that he may be subrogated to the rights and equities of the complainant, and that the defendant Sanford may be ordered and adjudged to pay over to the defendant the purchase money so paid for said premises, together with interest.

Replications were filed to the several answers, after which evidence was heard, and the court decreed that Ira Heath, within twenty days from the filing of the decree, make, execute and deliver to Henry Deihl a good and sufficient deed, in due form, to release to said Deihl all right, title and interest of said Heath in said premises (describing them), and, in

default of said Heath or his legal representatives, that John S. Stager make, execute and deliver to said Deihl a deed for said premises.

The other facts material to the question before the court appear in the opinion.

Mr. C. J. JOHNSON, and Mr. A. C. JOHNSON, for the plaintiff in error.

Messrs. DINSMOOR & STAGER, for the defendant in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The bill in the present case is claimed to be in the nature of a bill of interpleader. Such a bill is said to differ from a bill of interpleader, in this: the complainant, by it, seeks not only to have the conflicting claims of the defendants against himself, which he desires to discharge to the proper parties, adjudicated, but also some affirmative relief; whereas in a bill of interpleader, strictly, he only asks that he may be at liberty to pay money or deliver property to the party to whom it of right belongs, and that he may, thereafter, be protected against the claims of both. 2 Daniell's Chancery Practice (Perkins' Ed.), 1680.

The decree in favor of Deihl against Heath, directing the conveyance of the land therein described, is entirely outside of any allegation or prayer in the bill. The bill is framed upon the theory that Heath's title may be superior to that of Deihl, and prays only, in the event such shall be ascertained to be true, that so much of the purchase money in the hands of Harmon's executor as shall have been paid on account of the land conveyed by Harmon to Hurless, which he had previously conveyed to Heath, shall be refunded to Hurless, that he make good his covenants to Deihl in respect to this land. It seeks to perfect no title, but simply to ascertain the present state of title, and have the purchase money refunded in accordance with the equitable rights of the parties, as they may be affected by the state of the title. It is obvious that, under the allega-

tions of the bill, the only pertinent inquiry was, is Heath's title superior to that of Deihl, and, if so, shall the purchase money paid for that portion of the property be refunded to the complainant?

Conceding it to be true, as contended by the counsel for Deihl, that the defendants to a bill of interpleader are considered as plaintiffs, each answer being regarded as the complaint of the party making it; and, hence, when it is determined the bill is properly filed, the court may proceed to direct a reference to a master, or hear evidence, and thereupon decree as to the rights of the parties without further pleadings; yet, neither the authorities cited by them, nor the well settled rules of equity pleadings, sanction such practice in any other case than where the bill is strictly a bill of interpleader, and the relief decreed is consistent with the allegations and prayer of the bill and the issues submitted by the answers.

Deihl's answer does not even pray for a decree in his favor against Heath. It sets up a claim of title to the property in himself upon the ground of estoppel, alleging that before he purchased from Hurless, Heath showed him the boundaries of the land Hurless was intending to sell, and that the boundaries thus shown him included the land now claimed by Heath. It may be recognized as the law, in general terms, if Heath pointed out the boundaries of the land to Deihl, intending that Deihl should rely upon him in that regard, and Deihl, in purchasing, did, in good faith, rely upon the correctness of the boundaries as pointed out to him by Heath, it would be such a fraud as a court of equity will not tolerate, to allow Heath to subsequently claim title to lands in himself, inconsistent with the boundaries which he thus pointed out. See 1 Story's Equity Jurisprudence, §§ 384, 385, *et seq.;* Bigelow on Estoppel, 473; *Jordan* v. *Deaton,* 23 Ark. 704.

But, unfortunately for Deihl, the evidence in the record utterly fails to show that Heath did point out to him the boundaries of the land before he purchased, or that he, in purchasing, relied upon or was misled by Heath's representations as to the location of the boundaries. Deihl swears, indeed, that

Heath, at one time, showed him the boundaries of the land conveyed by Hurless to him, as containing what Heath now claims to belong to himself; but he does not say that this was before his purchase, or that it in any degree affected his conduct in respect to the land. The necessary inference from the dates given by him, when compared with the date of his deed from Hurless, is that this was not until about one year after his purchase; and so the act lacked the most essential elements to constitute an estoppel. Bigelow on Estoppel, 560; 1 Story's Equity Jurisprudence, § 386.

There is evidence strongly tending to show that the deed from Harmon to Heath was not intended to include the land now claimed by Heath from Deihl, and that the description embracing it was inserted therein by mistake; but Deihl's answer sets up no superior equity in himself on that ground, and, as before observed, the bill is not framed upon the hypothesis that a decree should pass directing a conveyance from Heath to Deihl. Upon the only ground, therefore, which to us it appears the claim of Deihl to the land, as against Heath, is, under the evidence preserved, tenable at all, there is not a single allegation in the pleadings to predicate a decree.

We are of opinion that Deihl, after answering, should have filed a cross-bill against Heath setting up his claim to the land according to his proofs, and specifically praying for the relief to which he deemed himself entitled.

The decree is reversed, and the cause remanded.

*Decree reversed.*