Manley *v.* Manley.

MANLEY *v.* MANLEY.

(*Jackson.* May 25, 1901.

BENEFIT SOCIETIES. *Mother, not wife, takes benefit of certificate.*

The mother, not the wife, is entitled to the death fund due on a certificate issued by a benefit society to one of its members after his marriage, and made payable to him personally in the event of his total disability, and to his mother in the event of his death, where the constitution and laws of the society do not exclude the mother in express terms from the class of eligible beneficiaries, although they do provide that the beneficiary department of the society shall be established and maintained "to provide substantial relief to members and their families in the event of death or total disability."

Case cited: Lane *v.* Lane, 99 Tenn., 639.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County. F. H. HEISKELL, J.

WM. M. RANDOLPH, for Bridget Manley.

TURLEY & WRIGHT for Margaret Manley.

BEARD, J. The complainant, Bridget, is the widow of Joseph H. Manley, who died in June, 1895, and the defendant, Margaret Manley, was his

Manley *v.* Manley.

mother. In the year 1882, the deceased, Joseph, became a member of a local lodge in Memphis, this being a subordinate lodge of an order known as the "Brotherhood of Locomotive Fireman." At the time of becoming a member he was an unmarried man, living with his mother, and continued to do so until his marriage to the complainant, Bridget, in the year 1886. By section 48 of the constitution of the order all members, save those disqualified as the result of a medical examination, were required to participate in the rights and burdens of what was designated as the "Beneficiary Department," but whether any certificate was issued to the deceased at the time he joined or afterwards, until the year 1887, is not shown in the record. In this latter year one was issued to him, which entitled him to share in that "department" to the amount of $1,500, which amount "the order agreed, in the event of his total disability, should be paid him, or at his death, to Mrs. M. Manley, his mother." In January, 1895, on account of a change in the by-laws of the order (immaterial to this litigation), this certificate was called in and a new one was issued, which, like the former, was payable to his mother in the event of his death. It will be observed from the dates, that both these certificates were issued to and received by the deceased subsequent to his marriage.

After the death of Joseph, upon proper proofs being made, the money due on this beneficial certi-

Manley *v.* Manley.

ficate was paid, by the order to the mother. This payment was made, according to the testimony of the secretary and treasurer, in obedience to the "constitution in force in 1895," which required him as such officer "to pay the money due on the account of the death of Joseph H. Manley to the person named in the beneficiary certificate."

Some three years after this payment the present bill was filed by the widow, in her own right and as the next friend of her minor children, seeking to recover from Margaret Manley this fund, upon either of two grounds—first, that it was the intention of Joseph H., and the agreement on the part of his mother, that the latter should hold the funds derived from his certificate in trust for the complainant; and second, that, notwithstanding the fact that the mother was named in the beneficiary certificate, as the party to receive payment, yet under the constitution of the order, the equitable ownership of the fund was in complainants at the death of Joseph, and that in collecting it, the defendant, Margaret, was their trustee and must account to them as such.

As to the first ground, that of fact, on which this contention is made, we think it not well taken. The evidence fails to make out either a purpose upon the part of the son to create a trust in favor of complainants, or an agreement on the part of the mother to hold the certificate or its proceeds in trust for them. On the contrary, we are satisfied,

23 P—13

that it was the intention of the son that the mother should be the absolute owner of the fund at his death. The fact that twice after his marriage he caused certificates to be issued payable to her, when, if he had desired his wife and children to be the beneficiaries, he could upon the suggestion have had them named as such, strongly repels the contention. The additional fact, indicating that the mother regarded herself, and was so regarded by him, as the sole beneficiary of the fund, is that from the beginning she paid all or quite all the assessments necessary to keep this insurance alive.

We see nothing in the record to overcome the force of these facts, which the theory of complainants, resting on the first ground, necessarily encounters. Nor do we think the second contention of the complainants is maintainable. Upon the face of the certificate, beyond question, Margaret Manley was entitled to this fund, and, having collected it, can hold it against all claimants. But the insistence is, that the constitution of the order, subject to which the certificate was issued, creates a special class of beneficiaries of the trust fund ; that the mother, in this case, was not of that class, and, therefore, the payment to and receipt by her of the sum in question was on equitable principles, for the benefit of the complainants. This contention must rest alone upon a construction of the constitution. For it is clear upon this record that the order, in paying it to her, did so believing that she was en-

titled to it as the true and absolute owner; and it is equally clear to us, that she received it in good faith, and without question as to her right to so receive it.

We will now consider the clauses in the constitution bearing on this claim of complainants:

Section 41 provides that "the Grand Lodge shall establish and maintain . . . a beneficiary department, in which all members who are eligible thereto are required to participate, levy assessments for the maintenance and support of the said department. . . . The assessments so levied shall constitute a fund, to be known as a beneficiary fund, which shall be disbursed exclusively in payment of beneficiary certificates in cases of death or total disability of members in good standing."

Section 47 is in these words: "The beneficiary department of this order, established to provide substantial relief to members and their families in the event of death or total disability, shall be known as the beneficiary department of the Brotherhood of Locomotive Firemen."

Section 49 provides the form of application for a beneficiary certificate, and Section 50 that for the certificate. To this latter section the certificate issued to Mrs. Manley in every respect conformed.

It will be observed that there are no restrictive words in Section 47. The terms used are general, and declare the purpose for which this beneficiary department is established, without fixing or under-

taking to fix beyond recall, a class to which, in case of death of a member, the money provided for must of necessity go. While the clear implication is that the fund raised is for the "substantial relief to members or their families in the event of death or total disability," yet there are no words depriving the member' of the right to designate any member of his family he may see proper as a beneficiary, or which gives one member of such family a fixed right superior to that of another.

By a reference to 1 Bacon on Benefit Societies, S. S. 243, 244 and 245, it will be found that there is more or less of divergence of opinion in the Courts in construing beneficiary clauses in the charters, constitutions and by-laws of the associations, one of whose objects is to provide an insurance fund, payable on the death of a member. Some of the Courts have adopted what may be termed a rigid construction, while others have taken what Mr. Bacon calls a "more liberal view" (section 245) of these clauses. The cases of *Hanna* v. *Hanna* (Texas) 30 S. W. Rep., 820, *Lister* v. *Lister*, 73 Mo. App. R., 99, and others relied on by counsel of complainants, may be said to have adopted the more rigid, while this court has ranged itself with those taking the "more liberal view."

In the case of *Massachusetts Catholic Order of Forresters* v. *Catherine Callahan et al.*, 146 Mass., 391, a certificate was issued to the mother of a member who afterwards married and then died. In

a contest over the proceeds of the certificate between the widow and the mother, it was held that the mother was entitled to take, notwithstanding the marriage.

It is true this case was rested on a statute enlarging the class of beneficiaries of such associations, yet the Court discussed a provision in the constitution of the Association very similar to the one we are now dealing with.

The Court said: "It is also contended that by its constitution the Association had so limited itself that it could not accept a designation of the mother. We [have no occasion to consider whether a beneficiary association might not, by its constitution, so limit itself in its operations that its endowments should be only for the benefit of one or more classes of those whom it might lawfully entitle thereto, as for the widows only or orphans only, of deceased members. We find no such intention manifested by this Association. The argument on the part of Mrs. Keepe (the widow), is that the constitution of 1882, under the title "object" has the effect to limit the benefits of the Association to two classes of persons only, widows and orphans.

The "name and object" of the Association are stated in the preamble to the constitution. It is declared that the object of the organization is to promote friendship, unity and true Christian charity. It defines each, unity being defined as "unity in uniting together for mutual support, and in making

suitable provisions for the widow and orphans." It would be a very forced construction to infer from this generality that the Association had thus excluded itself from making provisions for those who were dependent on the deceased, which it legally might make when this constitution was originally formed, or for his relations which it might make when Callahan became a member."

In *Manuby* v. *Knight of Birmingham*, 115 Pa. St., 305, the same liberal construction was given to a charter clause of one of these beneficial associations, which was in these words: "The purposes of this corporation shall be the maintenance of a society for the purposes of benefiting the widows and orphans of deceased members." A person, other than a widow or orphan of a deceased member to whom a certificate had been issued, when demanding payment, was met by a defense that the contract was *ultra vires*, and it was so held by the lower Court.

In reversing this decision the Court of last sort said: "We think this is too narrow and strained a view to take of this section of the charter. While it is true that the general purpose of the corporation is there stated, the maintenance of a society for benefiting and aiding widows and orphans of deceased members, it must be observed that this is the only statement of a general purpose . . . There is no prohibitory or restrictive language excluding from the powers of the

corporation the right to contract specially with the member for the payment of benefits to other persons than his widow or orphans."

This liberal rule was applied by this Court in *Lane* v. *Lane*, 99 Tenn., 639. The controversy there was between the widow of a deceased member of the American Legion of Honor and a brother, who was designated as the beneficiary in a certificate issued.

This Order was incorporated under the laws of the State of Massachusetts, and one of its statutory purposes was "to establish a benefit fund from which, on satisfactory evidence of a death of a member of the Order, who had complied with all its lawful requirements, a sum not exceeding $5,000 shall be paid to the family, orphans, or dependants, as the member may direct." A by-law of the order designated as beneficiaries "husband and wife . . . relatives or persons dependant on the member."

The insistence of the widow was that the term "relative," used in the by-law, is shown by the context to mean such relatives as are dependent upon the assured. But this contention was held to be unsound, and that the word "family" and "relative," used respectively in the organic law and by-laws, clearly permitted the member to select his brother as a beneficiary, although the latter was in no sense a "dependent" of the former.

Following the line of these decisions, and espe-

cially of the one last referred to, there is no rea-
son why the mother of Joseph H. Manley should
not have been named as the beneficial owner of the
certificate in this case, and was not entitled to the
fund, in her own right, upon his death.

In the constitution of the order we are now deal-
ing with, there is no context from which to argue,
with apparent force, as in *Lane* v. *Lane* supra, that
the word "family" is to have a narrow meaning,
so as to confine it to those constituting the imme-
diate household of the deceased member. Especially
should this narrow construction be avoided in a
case like the present, where the mother had a clearly
insurable interest in the life of the member. *War-
mick* v. *Davis*, 104 U. S., 927.

We think there was no violation of the organic
law in the issuance of this certificate to the mother,
although the member was at the time a married
man ; and we, are satisfied that, when the money
was paid to her, it was in discharge of a valid ob-
ligation assumed by the order, in strict conformity
with Section 51 of its constitution, which is as fol-
lows : "Upon the death of a beneficiary member in
good standing, the person or persons named in the
beneficiary certificate shall be entitled to receive,
from the beneficiary fund of the order, the sum
mentioned in the beneficiary certificate issued from
the Grand Lodge office, as determined by his appli-
cation for the same and the record of the Grand
Lodge."

Manley *v.* Manley.

The view we have expressed, we are satisfied, conforms to the spirit of the constitution of this Association, as well as to the letter of its obligation, and certainly reaches the merits of this case. It follows that the decree of the Chancellor is reversed and the bill of the complainants is dismissed.